UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------x
TARIK HARVEY-PHILIPS,

                           Petitioner,

                -against-

JOSEPH T. SMITH,

                         Respondent.

------------------------------------------------------x

**MEMORANDUM & ORDER**

16 CV 3086 (RJD)

DEARIE, District Judge.

Petitioner Tarik Harvey-Philips, serving a sentence of 45 years to life for his conviction after trial of second-degree murder and related charges, petitions the Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.

Harvey-Philips was one of several shooters who opened fire upon a group of men outside a Brooklyn housing project at approximately 7:30 p.m. on September 7, 2002, killing Kevin Robinson, who was home on leave from the United States Navy, and injuring Jody Brown (Robinson's shipmate), Jonathan Spraus, and Kenen Courts. The principal issue at trial as captured in the summations was the reliability of Brown's identification of petitioner as a shooter. See Trial Transcript ("TT") at 1122 (defense asserts that "this case is a who done it") and 1229 (state acknowledges that the jury "only heard from one eyewitness that identified [petitioner] as the shooter"). Brown testified that several days before the shooting he exchanged words with petitioner at a basketball court and so when the shooting began, petitioner was his "immediate focus." Id. at 302-303. (Courts and Spraus said that because of the chaos they did not see who fired.) Brown also testified that he identified petitioner at a lineup.

Additionally, in Mirandized post-arrest statements, petitioner stopped short of confessing

to the crime but gave particulars evincing consciousness of guilt.  He acknowledged the exchange of words with Brown at the basketball court; stated that after the shooting he spoke with victim Spraus, who "was cool about being shot at"; and added that "there was no bad blood between [Spraus and him] because of the shooting."  Id. at 858.

The jury convicted petitioner of Robinson's murder, attempted murder in the second degree relating to Brown, assault in the first degree relating to Spraus and Courts, and criminal possession of a weapon in the second degree.[1]  He was sentenced to concurrent terms of twenty years for the attempted murder, eight years for each assault, and ten years for the weapon count plus a consecutive term of twenty-five years to life for the murder.  The Appellate Division found the evidence insufficient to establish the "serious physical injury" requirement for the first-degree assault involving Spraus, reduced that count to third-degree assault, and otherwise affirmed the conviction as modified.  People v. Philips, 120 A.D.3d 1266, 1267 (2d Dep't 2014), lv. app. denied, 24 N.Y.3d 1122 (2015).

As grounds for habeas relief petitioner claims (1) that the identification evidence was legally insufficient; (2) that the court altered the order of trial and deprived him of a fair trial when the court reopened the state's case in response to the defense summation, ECF No. 1 at 6; (3) that certain prosecutorial summation remarks denied him a fair trial, id. at 7; and (4) that the admission of petitioner's post-arrest statements violated his "indelible state right to counsel"

---

[1] Petitioner was tried jointly with Ernest Iverson.  Separate juries considered the charges as to each defendant.  Iverson was convicted of the same crimes as petitioner, received the same total sentence of 45 years to life, and the Appellate Division affirmed his conviction without modification.  People v. Iverson, 56 A.D.3d 491 (2d Dep't 2008), lv. app. denied, 11 N.Y.3d 926 (2009).  Barry Morgan and Rashawn Edwards were charged in separate indictments with acting in concert to commit the same crimes; each pled guilty to first-degree manslaughter and was sentenced to nine years.

because a violation of probation in an unrelated matter was filed, and an arrest warrant on that matter issued, before petitioner was apprehended for the Robinson murder. Id. at 10. For the reasons to be discussed, the application is denied and the petition is dismissed.

## DISCUSSION

I.   **GENERAL HABEAS STANDARDS**

Habeas relief is authorized "only on the ground that [an individual] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Where, as here, the claims offered as grounds for habeas relief were already decided by a state court, the habeas court's review is highly deferential.   The habeas statute provides:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court *shall not be granted* with respect to any claim that was adjudicated on the merits in State court proceedings *unless* the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

28 U.S.C. § 2254(d)(1), as amended by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") (emphases added). This statute "imposes important limitations on the power of federal courts to overturn the judgments of state courts in criminal cases" and "respects the authority and ability of state courts and their dedication to the protection of constitutional rights." Shoop v. Hill, 139 S. Ct. 504, 506-07 (2019) (internal quotations and citations omitted). A federal court therefore has "no authority to issue the writ of habeas corpus" unless the statutory requirements are met. Parker v. Matthews, 567 U.S. 37, 40 (2012).

Federal law is "'clearly established' within the meaning of [the habeas statute] only when it is embodied in a holding of th[e] [Supreme] Court," Thaler v. Haynes, 559 U.S. 43, 47 (2010), "as opposed to the dicta," Williams v. Taylor, 529 U.S. 362, 412 (2000), or the holdings

3

of federal appellate courts.  Carey v. Musladin, 549 U.S. 70, 74 (2006).  A state court decision is "contrary to" established federal law "if the state court arrives at a conclusion opposite to that reached by th[e] [Supreme] Court on a question of law or if the state court decided a case differently than the[e] [Supreme] Court has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 313 (2000).  The state court decision is an "unreasonable application of" federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decision but unreasonably applies that principle to the facts of the prisoner's case."  Id.  This means that the state court decision "must be so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."  Shoop, 139 S. Ct. at 507. See also Virginia v. Le Blanc, 137 S. Ct. 1726, 1728 (2017) ("In order for a state court's decision to be an unreasonable application of this Court's case law, the ruling must be objectively unreasonable, not merely wrong; even clear error will not suffice") (internal quotation marks and citations omitted); Burt v. Titlow, 571 U.S. 12, 16 (2013) (federal habeas courts "will not lightly conclude that a State's criminal justice system has experienced the extreme malfunction for which federal habeas relief is the remedy") (internal quotations, citations and alterations omitted).  But see Brumfield v. Cain, 135 S. Ct. 2269, 2277 (2015) ("even in the context of federal habeas, deference … does not by definition preclude relief") (internal quotation marks, citation and alterations omitted).

Under the less-invoked second branch of § 2254(d), a petitioner may seek habeas relief by challenging the factual basis of a state court decision.  See 28 U.S.C. § 2254(d)(2) (habeas court may overturn the state court's decision only if it was "based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceedings.").  A "state-court factual determination is not unreasonable merely because the federal habeas court

would have reached a different conclusion in the first instance." Wood v. Allen, 558 U.S. 290, 301 (2010). Fact-based claims also implicate 28 U.S.C. § 2254(e)(1), which provides that "a determination of a factual issue made by a State court shall be presumed to be correct," and that the petitioner "shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."

## II.  ANALYSIS OF PETITIONER'S CLAIMS

### A.  The Sufficiency of the Identification Evidence

In the claim petitioner labels his "sufficiency" challenge, he merely offers various reasons why a jury might question Brown's identification testimony, including that the shooting occurred too quickly for Brown to observe adequately and that Brown admitted that he did not see the faces of any other shooters. Petitioner raised this claim in a post-conviction motion under C.P.L. §330, which the trial court denied in an eight-page decision dated January 3, 2006 (the "CPL 330 Decision"). The court found that Brown's identification testimony established that petitioner "acted as the principal shooter or aided, assisted or importuned in the shootings." CPL Decision at 6-7. Petitioner also raised this claim on appeal; the Appellate Division ruled that, "[v]iewing the evidence in the light most favorable to the prosecution . . . we find that it was legally sufficient to establish, beyond a reasonable doubt, [petitioner's] guilt" of the crimes of conviction. Philips, 120 A.D.3d at 1267.

For evidentiary sufficiency claims, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318-19 (1979) (emphasis in original) (internal quotations and citations omitted). On habeas, the standard of review is "twice deferential," Parker, 567 U.S. at 43, because "the deference to

state court decisions required by § 2254(d)" is to be "applied to the [ ] already deferential review" of Jackson.  Cavazos v. Smith, 565 U.S. 1, 2 (2011).

These standards foreclose petitioner's credibility-based sufficiency claim.  The Court must defer to the state court's assumption that the jury credited Brown and drew all reasonable inferences in the prosecution's favor.  Jackson, 443 U.S. at 326 ("a federal habeas corpus court faced with a record of historical facts that supports conflicting inferences must presume . . . that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."); Schlup v. Delo, 513 U.S. 298, 330 (1995) ("under Jackson, the assessment of the credibility of witnesses is generally beyond the scope of review").  The sufficiency claim therefore fails to state a basis for habeas relief.[2]

## B.    The Reopening of the State's Case

In his counsel-prepared brief on direct appeal, petitioner cast his challenge to the reopening of the state's case solely as an improper altering of the order of trial as prescribed by state law.  See Brief for Defendant-Appellant at pp. 25-31 (arguing that the trial court exceeded "its discretion" under C.P.L.§ 260.30 to "alter the order of proof…in furtherance of justice").  In his habeas papers petitioner adds that the alleged state procedural error deprived him of his due process right to fair trial, ECF 1 at 6, but because he did not mention or allude to his federal constitutional rights in his state appellate briefing, that feature of this habeas claim is unexhausted and therefore not a basis for habeas relief.  See 28 U.S.C. § 2254(b)(1)(a) (state

---

[2] Separately, petitioner challenges his convictions as against the weight of the evidence but such claims do not involve federal law and are not cognizable here.  Rodriguez v. LaValley, 2019 WL 3718022, at *8 n.10 (E.D.N.Y. Aug. 7, 2019).  In any event, the Appellate Division was "satisfied that the verdict of guilt" was "not against the weight of the evidence."  Philips, 120 A.D.3d at 1267.

prisoner seeking federal habeas review must first exhaust available state remedies); <u>Daye v. Att'y Gen. of State of New York</u>, 696 F.2d 186, 191-92 (2d Cir. 1982) (stating that "exhaustion requirement is not satisfied unless the federal claim has been 'fairly presented' to the state courts," including "both the factual and the legal premises of the claim [the petitioner] asserts in federal court").

The exhausted core of the claim, based solely on state law, does not present a basis for habeas relief.  <u>See</u> <u>generally</u> <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions.").

In any event, assuming the claim were reviewable here, it would not state a basis for habeas relief.  The Appellate Division rejected the claim on the merits, finding that the trial court "providently exercised its discretion in granting the People's application to reopen their case to admit certain evidence concerning a witness's ability to describe [petitioner] shortly after the shooting in order to rectify a misleading impression created by defense counsel's summation." <u>Philips</u>, 120 A.D.3d at 1268.  That ruling was not legally or factually unreasonable under AEDPA.

Indeed, the record confirms that, as the court determined at trial (TT at 1160-72) and again on the CPL §330 motion, defense counsel's remarks "were misleading and contrary to uncontroverted facts which had been disclosed in discovery."  CPL 330 Decision at 6-7. Counsel argued that Brown's description of petitioner's clothing during the shooting and at the basketball court—on both occasions, a white t-shirt and jeans—was based on what petitioner wore in the lineup rather than actual memory.  <u>See</u> TT at 1142.  Only four days after the shooting, however—and eight months before the lineup—in an audiotaped statement furnished

to the defense in discovery, Brown told police that during the shooting petitioner wore a white t-shirt, blue jeans, and a Yankee cap.  Id. at 1159, 1143, 1160-72.

The court appropriately exercised its discretion to reopen the state's case, as the Appellate Division concluded, in order to rectify the misleading impression.  The objective was accomplished by introducing a stipulation co-drafted by the parties and read to the jury by the court, as follows:

> People and defense have agreed that on 9/13/2002, Jody Brown was interviewed at Kings County Hospital by an assistant district attorney, and that the interview was audiotaped.  During the interview, Jody Brown described the perpetrator as wearing blue jeans, a white t-shirt and a blue Yankee ball cap at the time of the murder.  During that same interview, Jody Brown was never asked to describe what the individual he had a confrontation with was wearing at the basketball court.

Id. at 1200.  The defense declined the court's offer to reopen its summation to address the stipulation.  Id. at 1198, 1201.[3]

In approving the reopening of the state's case, the Appellate Division did not unreasonably apply any identifiable Supreme Court fair-trial or other holding.  Petitioner's challenge to the reopening therefore cannot be a basis for habeas relief.

───────────────

[3] At trial, counsel objected that Brown's audiotaped statement was unsworn hearsay, testimonial in nature, and that its admission would therefore violate petitioner's right of confrontation under Crawford v. Washington, 541 U.S. 36 (2004).  The court overruled the objection, concluding that the statement was being admitted not for its truth but for the non-hearsay purpose of establishing that Brown made it, to rebut the defense summation claim of recent fabrication.  Petitioner reasserted his Crawford-based challenge to the court's decision to reopen the state's case in his motion to vacate pursuant to CPL § 330, and the court concluded, without elaboration, that the claim was "without merit."  330 Decision at 8.  Thereafter, petitioner apparently, and wisely, abandoned his confrontation claim, as he did not present it in any form to the Appellate Division and does not raise it here.

8

### C.  The Prosecutor's Summation

The prosecutor was aware of facts not introduced at trial, including that police interviewed several eyewitnesses to the shooting and that Spraus, who would not be identifying petitioner at trial, had identified him and the other shooters at the start of the investigation.  See TT. June 1, 2005 at 13-16.  In summation, the prosecutor drew on this knowledge when arguing that "there were other people in front of [the building where the shooting occurred] who would have had an excellent opportunity to see who these perpetrators were."  TT. at 1202.  The court sustained the defense objection and struck the remark.  The court also sustained the defense objection to the prosecutor's assertion that "Brown . . . [was] not the only witness" and that "[t]he other thing that we find with witnesses is that they have . . . different levels of cooperation."  Id. at 1225.  Additionally, the prosecutor argued that, "[w]e learned that [Spraus] grew up in th[is housing project], he's lived there all his life, and he still lives there.  And at the end of his testimony, he's going back there, presumably."  Id.  Defense counsel objected that the prosecutor improperly suggested to the jury that Spraus saw more than he stated in his testimony and that he was personally vouching for Spraus's lack of credibility.  The court sustained the objection only to the statement that Spraus was "presumably . . going back."  Id. at 1226-27.

Petitioner claims here, as he did on appeal, that the prosecutor's objectionable summation remarks denied him a fair trial.  The Appellate Division concluded that the claim was "largely unpreserved for appellate review, since [petitioner] either failed to object to the remarks at issue, made only a general objection, or failed to request further curative relief when his objections were sustained, and he failed to make a timely motion for a mistrial on the specific grounds he now asserts."  Philips, 120 A.D.3d at 1268.  The court further concluded, "[i]n any event, the challenged portions of the prosecutor's summation were fair comment upon the evidence, were

9

responsive to the defense counsel's summation, were within the bounds of rhetorical comment, or do not otherwise require reversal." Id.

Putting aside the claim's uncertain procedural status given the Appellate Division's mixed preservation rulings, the claim does not state a basis for habeas relief. Under the applicable Supreme Court standard, "undesirable or even universally condemned" prosecutorial summation arguments do not deprive a defendant of his constitutional rights. Darden v. Wainwright, 477 U.S. 168, 181 (1986). Instead, "[t]he relevant question is whether the prosecutors' comments so infected the trial with unfairness as to make the resulting conviction a denial of due process," id., a standard the state courts are afforded wide latitude in applying. See, e.g., Yarborough v. Alvarado, 541 U.S. 652, 664 (2004) ("The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations").

The Appellate Division's rejection of petitioner's due-process challenge to the prosecutor's summation is not unreasonable under AEDPA. The record supports the appellate court's conclusion that the challenged remarks were a fair comment upon the evidence, which included petitioner's statement that he spoke to Spraus the day after the shooting. Likewise, it was reasonable for the Appellate Division to view the challenged arguments as responsive to the defense summation, which raised the subject of where Spraus lived by commenting that Spraus had known petitioner from the neighborhood for seven years. Further, it would be reasonable for the appellate court to have concluded that, even if better left unsaid, the few challenged prosecutorial remarks did not "infect[ ] the trial with unfairness," Darden, 477 U.S. at 181, because the heart of the state's case was Brown's identification and petitioner's inculpatory statements, not the prosecutor's stricken invitation to speculate about what else Spraus or unnamed witnesses may have seen. Those few challenged remarks, therefore, could not have

10

had a "substantial and injurious effect or influence in determining the jury's verdict," <u>Brecht v. Abrahamson</u>, 507 U.S. 619, 638 (1993), so any potential error was harmless.

**D.    <u>The "Indelible State Right to Counsel"</u>**

Petitioner claims that admission of his post-arrest statements violated his New York right to counsel.  He says that right attached seven months before his interrogation for the Robinson murder when a violation of probation in an unrelated matter was filed and an arrest warrant on that matter issued.  Petitioner first raised this claim in his C.P.L. § 330 motion but the court did not address it in the decision denying relief.   Petitioner raised the claim again on direct appeal, where the Appellate Division declined to reach it on the grounds that it was based on matters outside the trial record.  <u>Philips</u>, 120 A.D.3d at 1268-69.  Finally, petitioner presented the claim in a post-conviction motion pursuant to C.P.L. § 440, where it was denied in a written decision dated October 27, 2015 (the "440 Decision").  The claim is exhausted because petitioner sought, unsuccessfully, leave to appeal the denial of 440 relief.  <u>People v. Philips</u>, No. 2015-12300 (2d Dep't Feb. 16, 2016).

Although petitioner includes in his habeas petition a citation to the Sixth and Fourteenth Amendments, his state court papers cast the claim exclusively as a violation of his *state* right to counsel.  The claim therefore fails to state a basis for habeas relief.  The use of federal language for the first time in the petition does not exhaust a claim, <u>see</u> <u>Daye</u>, 696 F.2d at 191-2 (exhaustion requires full presentation in state court of factual and legal theories advanced in federal petition), and an entirely state-based right-to-counsel claim is not cognizable.  <u>See</u>, <u>e.g.</u>, <u>Licausi v. Griffin</u>, 460 F.Supp.3d 242, 262 (E.D.N.Y. 2020) ("the violation of the indelible right of counsel under the New York State Constitution [is] not [a] bas[i]s for federal habeas relief because federal habeas corpus relief does not lie for errors of state law") (internal quotation and

11

citation omitted), app. dismissed, 2020 WL 7488607 (2d Cir. Nov. 17, 2020); Shankle v. Unger,

2011 WL 1322017, at *6 (E.D.N.Y. Mar. 30, 2011) ("To the extent that Petitioner based his

claim [ ] in state court on his New York right to counsel, which is broader than his federal

constitutional right to counsel, he now presents no cognizable federal question for review");

Kirby v. Senkowski, 141 F. Supp. 2d 383, 398 n.7 (S.D.N.Y. 2001), aff'd, 61 F. App'x 765 (2d

Cir. 2003) ("[S]tate law claims, including New York 'indelible right to counsel' claims, are not

cognizable on habeas.").

      In any event, it appears that the 440 court correctly decided that petitioner's state right to

counsel was not violated by the admission of his statements.  In brief, under New York law, a

defendant's right to counsel indelibly attaches upon the issuance of an arrest warrant, and if the

defendant is in custody and represented in that matter, he may not waive his right except in the

presence of counsel, but if he has not yet retained or been appointed counsel in that matter, he

may be questioned about unrelated matters.  See People v. Lopez, 16 N.Y.3d 375, 382-84

(2011); People v. Kazmarick, 52 N.Y.2d 322, 327-28 (1981); People v. Blanchard, 279 A.D.2d

808, 810 (3d Dep't 2001).  Here, as reflected in the 440 Court's factual findings, which are

presumed to be correct, "on October 8, 2002, the New York City Department of Probation filed a

declaration of delinquency (DOD) along with specifications of [an] alleged violation of

probation (VOP)" that "alleged only [petitioner's] failure to report to his probation officer on

several dates."  Id.  (By way of reference, the Robinson murder occurred a month earlier, on

September 7, 2002, and petitioner was arrested and questioned on May 7, 2003).  The 440 court

further found that "[b]ecause an arrest warrant was issued contemporaneously with the DOD, the

criminal proceedings commenced [and] thus, [petitioner's] right to counsel attached as to that

VOP."  Id. at 2.  Finally, the court concluded that "although [petitioner] may have been entitled

to counsel, he was not actually represented by counsel on the VOP at the time of his arrest" and "[a]s such, the police were permitted to question him about the homicide, since it was a matter unrelated to the VOP."  Id. (citing  Kazmarick and Blanchard).[4]

In sum, petitioner's claim that the admission of his post-arrest statements violated his right to counsel under New York law does not present a basis for federal habeas relief.

## CONCLUSION

For all the reasons discussed, the application of petitioner Tarik Harvey-Philips for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied in its entirety.  Because petitioner has not "made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), a certificate of appealability will not issue.

SO ORDERED.

Dated: Brooklyn, New York
    September 14, 2021

_____
        s/
RAYMOND J. DEARIE
United States District Judge

_____

[4] Petitioner's claim includes the distinct assertion that his state-law rights were violated because he was also questioned "about his probation violation."  ECF No. 1 at 10.  During the interrogation about the shooting the detective said to petitioner, "if you didn't know anything about [the shooting] and weren't involved, why did you stop going to Probation?"  TT. at 845. The court instructed the jury that "the evidence about the failure to report to Probation is only relevant on the issue of consciousness of guilt" and not "any other purpose." Id. The Court need not decide whether the detective's reference to petitioner's failure to report to probation violated petitioner's *state* right to counsel because even if it did, a violation of state law would not be a basis for federal habeas relief.  The reference did not implicate petitioner's *federal* right to counsel, which had not yet attached to the probation violation.  See Gagnon v. Scarpelli, 411 U.S. 778, 787, 782 (1973) (state has no "constitutional duty to provide counsel . . . in all probation or parole revocation cases" because "[p]robation revocation, like parole revocation, is not a stage of a criminal prosecution").

13